**In re Jane DOE.**

No. 87–374–Appeal.

Supreme Court of Rhode Island.

Order Sept. 10, 1987.
Opinion Nov. 12, 1987.

John Breguet, for MHRH.

Clifford Zucker, for Rhode Island Protection & Advocacy.

Joseph R. Palumbo, Jr., for American United for Life.

Lynette J. Labinger, guardian ad litem.

James R. McGowan, for Jane Doe.

ORDER

This matter came before a single justice of this court pursuant to a motion filed by the natural mother of Jane Doe to stay the September 9, 1987 Order of the Family Court directing Jane's court appointed guardian ad litem to take steps necessary to procure the termination of Jane's pregnancy. After meeting with the parties and carefully considering the arguments presented, it is hereby directed that the following order shall enter.

1. The motion for stay is granted as to paragraph one of the September 9, 1987 Family Court Order.

2. The Superior Court and the Family Court papers in this matter, entitled *IN RE: JANE DOE,* Family Court No. A–87–0095–01 and Superior Court No. MP/87–3547, respectively, including all necessary transcripts,

shall be transmitted to this court by Tuesday, September 15, 1987.

3. All memoranda shall be filed no later than September 15, 1987.

4. All papers relating to this case, including the Family Court and Superior Court files identified above, are ordered sealed.

5. The motion for stay will be considered by the full court at the earliest practicable date following the filing of memorada.

## OPINION

PER CURIAM.

This case came before us on the conference calendar pursuant to a motion filed on behalf of the mother of Jane Doe, which motion sought a stay of a judgment entered by the Family Court. This judgment was entered pursuant to a petition for instructions brought by the executive director of the Division of Retardation of the Rhode Island Department of Mental Health, Retardation, and Hospitals (MHRH). The director sought by his petition to obtain instructions from the Family Court relating to an abortion procedure to be performed during the first trimester of pregnancy upon Jane Doe.[1] After hearing the evidence, a justice of the Family Court authorized the termination of pregnancy over the objection of the mother of Jane Doe. From this order the mother filed an appeal with this court and sought stay of the order of termination pending appeal. We denied the motion for stay and thereafter denied a motion for reconsideration of said denial. This opinion sets forth the reasons for our denial of the request for stay. The facts as found by the trial justice are in pertinent part as follows.

Jane Doe, who at the time of the hearing was twenty years of age, is profoundly retarded, having adaptive behavior skills equivalent to those of a child of less than three years of age. She then had a receptive vocabulary of from eight to ten words. She also continues to suffer from cerebral palsy as well as a seizure disorder, which is controlled by medication, and has some difficulty in walking. In addition, she has significant behavior problems, including self-induced vomiting, spitting, hitting, tongue pulling, and biting.

On June 28, 1971, at the age of four, she was placed voluntarily by her mother at the Joseph H. Ladd Center. She resided in that state institution until 1978.

Thereafter, the state agencies, unaware of the whereabouts of Jane Doe's parents, filed a petition seeking to adjudge the child dependent and neglected and to have her therefore committed to the care, custody, and control of the appropriate state welfare agency. After notice by publication and hearing on March 22, 1979, a court order was entered finding the child dependent and neglected and committing her to the custody of Child Welfare Services, the predecessor agency of the Department of Children and Their Families (DCF). Thereafter, Jane Doe was placed with a foster family until 1983, when she was transferred to a group home.

During the period of her placement with the state and its various agencies, Jane Doe was visited by her mother very infrequently. In recent years, the trial justice found that at most there were two visits in 1983, two visits in 1984, two visits in 1985, one in 1986, and two in 1987.

During her residence at the group home, Jane Doe was the victim of a sexual assault by a person unknown, which resulted in a finding by medical examination at the Women and Infants Hospital on August 5, 1987, that she was ten weeks pregnant. As a result of this medical finding, the instant petition was filed seeking permission to terminate the pregnancy. The petition was at first filed in the Superior Court, where a guardian *ad litem* was appointed. After consideration, a justice of that court determined that jurisdiction was in the Family Court by virtue of the provisions of G.L. 1956 (1981 Reenactment) § 14–1–3, as amended by P.L. 1984, ch. 216, § 1, and § 14–1–6, as amended by P.L. 1987, ch. 118,

1. The petition for instructions was originally filed in the Superior Court but transferred to the Family Court as later indicated in this opinion.

art. 15, § 1. As a consequence, the petition was transferred to the Family Court which accepted jurisdiction of the petition and reappointed the same individual as guardian *ad litem*.

Medical evidence presented in the Family Court tended to show that Jane Doe would be unable to understand the pain and travail that would normally attend pregnancy and that it would be in her best interests to terminate the pregnancy without delay. One expert testified that a high risk of birth defects also existed by reason of the exposure of the fetus to Dilantin, a medication given to Jane Doe to control her seizure disorder. Testimony indicated that a prompt termination of the pregnancy would minimize the risks to Jane Doe's health but that delay in the termination would increase the risk of the procedure. A second expert medical witness testified that pregnancy would be traumatic to Jane Doe and that the attendant medical risks provided a compelling need in her best interests to discontinue the pregnancy.

The petition was opposed by the mother of the child, who had obtained an appointment as temporary guardian in the Probate Court of the City of Woonsocket. This appointment was obtained without any notice being given either to DCF or MHRH. In any event, counsel for the mother was permitted to participate fully in the hearing before the Family Court.

After considering the evidence in the case, including the deposition of two medical expert witnesses and the report of the guardian *ad litem*, the Family Court justice determined:

1. That jurisdiction of the case remained with the Family Court pursuant to the provisions of § 14–1–6 since the child had previously been determined to be dependent and neglected and had remained under the jurisdiction of the court since that time.

2. That the mother of the child was not acting in the child's best interests and that the child was not within the mother's care, custody, or jurisdiction.

3. That if Jane Doe were capable of giving or withholding consent, she would choose to terminate the pregnancy.

4. That it was clearly in the best interests of Jane Doe to terminate the pregnancy as soon as possible.

On the basis of these findings, the trial justice ordered the guardian *ad litem* to give the necessary permission for termination of the pregnancy as soon as practicable. He denied the request by counsel for the mother for a stay of this order. Consequently, counsel moved for a stay in this court, and we granted expedited consideration of the motion for stay. We considered memoranda filed by all the parties as well as the transcript of the hearing before the Family Court at a conference session held September 18, 1987. As a result of our consideration of extensive memoranda filed by the parties, we denied a request to reconsider our denial of the motion for stay. Our reasons for denying a stay of the trial justice's order are as follows.

There is no question that Jane Doe, if competent, would have had an absolute and untrammeled constitutional right to terminate her pregnancy as of the time it was requested of the trial justice. *Doe v. Bolton*, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973); *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). Consequently the only question presented by this litigation was the determination of whether Jane Doe would have chosen this medical alternative if she were competent to exercise freedom of choice in her own behalf. Although this is a question of first impression in Rhode Island, courts in other jurisdictions have developed extensive case law concerning the right of surrogate decision makers to request or reject medical treatment on the part of incompetent wards or family members.

Beginning with the case of *In re Quinlan*, 70 N.J. 10, 355 A.2d 647 (1976), the Supreme Court of New Jersey recognized the right of a surrogate decision maker to accept or withhold medical treatment on behalf of an incompetent individual. It was established that the surrogate decision

maker may order the discontinuance of medical treatment for a patient in a persistent vegetative state pursuant to the right of any individual to accept or reject medical treatment at his or her option. In the *Quinlan* case the father as guardian was recognized as the appropriate surrogate decision maker. New Jersey has applied this doctrine to a nursing-home patient in *Matter of Conroy*, 98 N.J. 321, 486 A.2d 1209 (1985).

Similarly, the Supreme Judicial Court of Massachusetts has articulated the right of a person, including an incompetent person, to accept or refuse medical treatment. This right is founded upon the basic principle of personal autonomy. The Massachusetts court has cast the doctrine relating to incompetent persons in the form of "substituted judgment." This substituted judgment may generally be exercised by the Probate Court of the Commonwealth upon the petition of those who have a legally cognizable interest in the welfare of the patient. Unlike New Jersey, the Supreme Judicial Court of Massachusetts has expressed a preference that this substituted judgment be exercised by the Probate Court, which is vested with general equity powers relating to incompetent individuals. The doctrine of substituted judgment has been implemented in *Superintendent of Belchertown State School v. Saikewicz*, 373 Mass. 728, 370 N.E. 2d 417 (1977), in which a state agency made the initial decision to withhold chemotherapy from a profoundly retarded person who was a patient at the state school. Subsequently, the doctrine of substituted judgment was applied in *Brophy v. New England Sinai Hospital, Inc.*, 398 Mass. 417, 497 N.E. 2d 626 (1986), wherein a wife sought to end the providing of nutrition by means of a gastrostomy tube to a husband who was in a persistently vegetative state of existence. In each instance the court attempted to determine what the decision of the incompetent person would have been had he or she been in a situation effectively to exercise it.

Although the foregoing cases deal with the right of a patient, whether competent or incompetent, to refuse medical treatment, it is an obvious corollary that the right to refuse medical treatment is the obverse side of the corresponding right to accept or demand it.

In the case at bar, the trial justice, after careful consideration of the evidence presented, determined that this incompetent young woman, if she had been capable of doing so, would have exercised the option to terminate a pregnancy brought about by sexual assault, particularly in light of the fact that the pain and disability caused by the pregnancy would have had a special impact upon this individual in light of her underlying conditions of seizure disorder and cerebral palsy. We are of the opinion that the trial justice's finding and determination in this respect were eminently reasonable and virtually compelled by the facts presented to him.

In respect to the jurisdiction of the Family Court, we are persuaded that the provisions of § 14–1–3, read in conjunction with § 14–1–6, would clearly establish retained jurisdiction in the Family Court until such time as Jane Doe reaches the age of twenty-one years, unless earlier discharged from the care and custody of DCF or MHRH.

Another issue presented by this case relates to the identity of the surrogate decision maker—or the determination of who has the right to invoke the jurisdiction of the Family Court to substitute its judgment concerning the decision the incompetent person would have made in regard to this medical procedure. The natural mother of the child sought to oppose the petition of the state agency on the ground that she, having been appointed temporary guardian by the Probate Court of the City of Woonsocket, was in a position to make a choice on behalf of her ward. Since the petition for temporary guardianship was granted without notice to DCF or MHRH, in whose custody Jane Doe has been placed *de facto* since she was four years of age and as a matter of law since March 22, 1979, when she was committed to the custody of Child Welfare Services, the predecessor of DCF, we are of the opinion that the purported

appointment was a nullity and is of no force or effect.

 In selecting the surrogate decision maker, the trial justice was correct in determining that the mother's contact with the child over the years of her placement with DCF was of such slight and sporadic quality as to disqualify her from making decisions on behalf of the child. The state agencies, as assisted by the guardian *ad litem*, acted in good faith and in the best interests of the incompetent person who had been placed in the custody of DCF and were properly considered by the court as the appropriate surrogates in attempting to exercise substituted judgment in respect to Jane Doe.

For the reasons stated, the motion for stay was denied and reconsideration of that decision was also denied. The case may be continued on the calendar of this court for such further proceedings in support of the appeal as the parties may present for our consideration.

FAY, C.J., and MURRAY, J., did not participate.